IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| HASSAN BOCOR BARROW, | |
| Petitioner, | |
| vs. | 0:26-CV-1029 |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security; Department of Homeland Security, in her official capacity, et al., | MEMORANDUM AND OPINION |
| Respondents. | |

The petitioner seeks immediate release from U.S. Immigration and Customs Enforcement custody in the Northwest Regional Corrections Center in Crookston, Minnesota. Filing 2. The Court will deny his petition.

The petitioner was born in Somalia and came to the United States in 2024. Filing 1 at 5; filing 2-1; filing 2-3 at 1. He was released on recognizance pursuant to § 1226, issued a notice to appear, and placed in removal proceedings. Filing 1 at 5; filing 2-2. He applied for asylum and withholding of removal. Filing 2 at 6; filing 2-3.

But in 2025, the petitioner fled to Canada. Filing 2 at 2. He was denied asylum there and returned to the United States by Canadian authorities under the "Safe Third Country Agreement"[1] between the United States and Canada.

---

[1] Formally known as the Agreement for Cooperation in the Examination of Refugee Status Claims from Nat'ls of Third Countries, Can.-U.S., Dec. 5, 2002, T.I.A.S. 04-1229, and the Additional Protocol to the Agreement between the Gov't of Can. and the Gov't of the U.S. for Cooperation in the Examination of Refugee Status Claims from Nat'ls of Third Countries, Can.-U.S., Mar. 29-Apr. 15, 2022, T.I.A.S. 23-325.

1

He was brought by Canadian authorities to the Pembina, North Dakota port of entry, where he was detained by American authorities. Filing 2 at 2. He remains in that detention. *See* filing 2.

The petitioner argues, primarily, that the government is acting unlawfully by detaining him pursuant to 8 U.S.C. § 1225(b)(2), as opposed to affording him a bond hearing pursuant to 8 U.S.C. § 1226(a). *See* filing 2. The government argues, cursorily, for its interpretation of those statutes that this Court has already rejected in a host of other cases, particularly *Velasco Hurtado v. Bondi*, No. 0:26-CV-546, 2026 WL 184884 (D. Minn. Jan. 24, 2026). *See* filing 5. Both sides submit that this case presents legal and factual issues similar to those already addressed by the Court. *See* filing 5 at 1; filing 6 at 6.

Both sides are wrong. This case is distinguished by the fact that, unlike other cases the Court has addressed, the petitioner here was *actually detained at a port of entry*. That distinction makes all the difference. The Court's decision in *Velasco Hurtado* relied on the way in which immigration laws distinguish between aliens who arrive at the border seeking admission, and those who are in the United States after entering, regardless of the legality of their entry. 2026 WL 184884, at *5 (citing *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). Accordingly, the Court held that § 1225 "mandates detention of 'arriving aliens' who are inspected while 'seeking admission' to the country at the threshold of initial entry," but that "[a]ll other noncitizens deemed inadmissible and apprehended by the government are detained subject to § 1226(a) . . . unless § 1226(c) (or some other provision) applies." *Id*.

And the petitioner here was an "arriving alien" when he was detained. The plain text of § 1225(a) requires inspection of "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission *or readmission* to . . . the United States[.]" (Emphasis supplied).

2

"An alien who has traveled abroad and seeks to reenter the country upon return is generally deemed to be seeking an admission into the United States. . . ." *Vazquez Romero v. Garland*, 999 F.3d 656, 660 (9th Cir. 2021). That's true even when an alien has habitually lived in the United States in a variety of ways, many of which confer far more legal residency than the petitioner's release on recognizance. *E.g. id.* (legal permanent resident who has committed crime of moral turpitude is regarded as "seeking admission"); *Svenin v. Casey*, No. 25-CV-1865, 2025 WL 2917319, at *2 (S.D. Cal. Oct. 14, 2025) (alien paroled into the United States is "applicant for admission" after leaving and returning to United States); *St. Charles v. Barr*, 514 F. Supp. 3d 570, 578 (W.D.N.Y. 2021) (alien with temporary protected status was on the threshold of legal entry after leaving and returning to United States); *Abitih v. Wilkinson*, No. 20-CV-6403, 2021 WL 733806, at *2 (W.D.N.Y. Feb. 25, 2021) (alien whose parole had expired and was denied entry to Canada was "arriving alien" on attempting to re-enter United States); *cf. Alawieh v. Tweedie*, No. 25-CV-10614, 2025 WL 3171170, at *1 (D. Mass. Oct. 31, 2025) (finding that habeas petition was mooted by petitioner's deportation but noting that alien who had lived in United States for 6½ years on student and employment visas had, by traveling to Lebanon and returning, subjected herself to inspection pursuant to § 1225(a)); *Cabrera Martinez v. Marich*, No. 25-CV-1110, 2025 WL 3771228, at *8 (W.D.N.Y. Dec. 31, 2025) (finding that alien detained in the United States after expiration of parole was not arriving alien, but noting that "[t]here is no question that had [the alien] left and presented himself again at the border, he would be an arriving alien under section 1225(b)").

As the Supreme Court explained more generally, in rejecting the habeas petition of an alien stuck on Ellis Island after leaving the United States and being excluded on his attempt to return,

3

> It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law. But an alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned. . . .
>
> Neither respondent's harborage on Ellis Island nor his prior residence here transforms this into something other than an exclusion proceeding. Concededly, his movements are restrained by authority of the United States, and he may by habeas corpus test the validity of his exclusion. But . . . harborage at Ellis Island is not an entry into the United States. For purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he has been here once before or not. He is an entering alien just the same. . . .

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212-13 (1953) (citations and quotations omitted).

The petitioner has directed the Court to no authority, nor is the Court aware of any authority, holding that a noncitizen detained at a port of entry isn't an "arriving alien" who is "seeking admission" to the United States and, therefore, subject to § 1225(b). Nor is there support for the petitioner's argument, filing 6 at 7, that the government was required to obtain a warrant prior to his detention: "§ 1225 contains no warrant requirement." *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025).

The Court can only conclude that because the petitioner was detained at a port of entry into the United States, he was an "arriving alien" who was "seeking readmission" within the meaning of § 1225(a), and is lawfully detained pursuant to § 1225(b). *See Velasco Hurtado*, 2026 WL 184884, at *4 (plain text of § 1225 applies to "noncitizens who are seeking lawful admission into the United States and come into contact with an immigration officer for inspection"). The petitioner's decision to try his luck in Canada was understandable, but unfortunately, it has legal consequences. Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus (filing 2) is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated this 17th day of February, 2026.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge